**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIZABETH LIGGON-REDDING,** | : | **No. 3:06cv227** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **AMERICAN SECURITY INSURANCE** | : | |
| **CO. and NATIONAL CITY** | : | |
| **MORTGAGE CO.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are Defendants National City Mortgage Company

("National City") and American Security Insurance Company's ("American

Security") defendants' motions to dismiss. The defendants seek dismissal

both for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure and for failure to join pursuant to Rule 12(b)(7).  (Doc.  Doc.

24; 27-2).  The motions have been fully briefed by all parties and this matter is

ripe for disposition.[1]

**BACKGROUND**

From the evidence of the record, taken in a light most favorable to the

Plaintiff Elizabeth Liggon-Redding, the pertinent facts are as follows.  Plaintiff

---

[1]Because the arguments in both defendants' 12(b)(7) motions are
similar, we have considered them together.  For the purposes of the 12(b)(6)
motions, we consider the defendants' arguments separately.

owned a home located at 451 Fawn Road in Jim Thorpe, PA. (Amended

Complaint (Doc. 22) at ¶ 5) (hereinafter "Am. Complt."). A deed to the

property indicates that the plaintiff's husband, Tyrone N. Redding, was a co-

owner of the property. (Motion to Dismiss by National City Mortgage Co.

(Doc. 24), Ex. A) (hereinafter "the deed"). Moreover, the plaintiff and her

husband are named in the deed as trustees of the estate for beneficiaries

Stewart A. Liggon and Brandi C. Liggon. (Id.)

Fire of an unknown cause destroyed the home on July 29, 2004. (Am.

Complt. at ¶ 10). At the time, National City was the mortgage holder of the

property, while Defendant American Security provided the residential

insurance coverage. (Id. at ¶ 7). Although not averred in the complaint,

National City presents documents in the public record indicating that the

home was involved in protracted foreclosure proceedings commencing in

August 2001.[2] (Motion to Dismiss by National City at ¶ 6). At the time of the

_____

[2] On August 23, 2001, National City filed a complaint in mortgage foreclosure in the
Court of Common Pleas in Carbon County, Pennsylvania. (See National City Mortgage Co.
v. Redding, No. 01-1935). On or around May 22, 2002, the Court of Common Pleas
granted National City's motion for summary judgment in that action. Judgment was
entered in favor of National City in the amount of $64,356.60 on July 12, 2002. (See
(Motion to Dismiss by National City Mortgage Co. (Doc. 24), Ex. D, Praecipe for
Judgment). Plaintiff Liggon-Redding appealed this decision. Each time, her appeal or
petition for certiorari was denied. See National City v. Liggon, 832 A.2d 551 (Pa. Super.
2003), app'l denied 577 Pa. 723 (2004), cert. denied sub nom., Liggon v. National City
Mortg., 543 U.S. 1131 (2005). National City issued a Writ of Execution in the action and a
sheriff's sale was scheduled for September 2004. (Motion to Dismiss by National City

fire loss, the insurance policy listed National City as the insured/mortgagee and plaintiff as the additional insured. The policy provided liability coverage of $149,000. (Am. Complt. at ¶ 8). National City asserts that it was paying premiums to American Security for "forced placed" hazard insurance on the property at the time of the loss because the plaintiff defaulted on her obligations to keep her home insured while it was mortgaged. (Motion to Dismiss by National City at ¶ 7-8).

The plaintiff asserts that the home was fully furnished and was not vacant when the fire occurred. Under the terms of the residential insurance policy, Defendant American Security was responsible for the full replacement value of the home, according to the plaintiff. (Am. Complt. at ¶ 11). Moreover, the plaintiff alleges deliberate undervaluation of the home by American Security's claim adjusters. (Id. at ¶ 31). Since American Security did not pay for the full replacement value of the home, the plaintiff alleges breach of contract and bad faith claims against them. (Id. at ¶¶ 36-46).

The first inspection by Defendant American Security's adjuster in September 2004 estimated the repair or replacement value of the plaintiff's

_____

Mortgage Co., Ex. D). The sheriff serving the writ posted service on the property, indicating that the property was "vacant" on the Return of Service form dated July 17, 2004. (Id., Ex. E). The fire that destroyed the plaintiff's home occurred twelve days later.

3

home at $71,874.97.   The actual cash value of the home was appraised at $39,281.23 and a check in that amount was forwarded to National City.  (Id. at ¶ 12).   A year before the check was issued, the plaintiff secured a default judgment in magisterial court related to property damage caused by National City or its agents while the home was in foreclosure.   National City appealed the default judgment to the Court of Common Pleas.[3]   Some time later, National City and the plaintiff settled that case by a formal written agreement titled "General Release of Any and All Liability," dated February 11, 2005.  (Complaint (Doc. 1), Ex. D)(hereinafter "Complt.").  In exchange for the plaintiff releasing and discharging any legal claims against National City, National City agreed to the release and satisfaction of the mortgage, applying $39,281.23 to the plaintiff's mortgage account.  (Am. Complt at ¶ 12).  The plaintiff asserts that National City agreed to accept this amount to satisfy the mortgage.  (Id. at ¶ 15).  However, National City did not actually release the mortgage until December 30, 2005, after several important events occurred.  (Complt., Ex. B, "Release of Mortgage Form").

In March 2005, upon the plaintiff's request, a second adjuster from Defendant American Security inspected the home, estimating the repair or

---

[3] See National City Mortgage Co. v. Redding, No. 03-3104 (Carbon Cty. Ct. of Com. Pleas, 2003).

4

replacement value to be $92,624.80 and the actual cash value to be

$71,790.91.  (Am. Complt. at ¶¶ 17-18).  American Security issued a

"supplemental" check made payable to National City and Plaintiff Liggon-

Redding on June 16, 2005 in the amount of $20,427.60 in June 2005. (Id. at ¶

19; See Complt., Ex. E).  On December 1, 2005, another "partial" check in the

amount of $28, 283.66 was made payable to National City and the plaintiff by

American Security.  (Am. Complt. at ¶ 21; See Complt., Ex. F).   The plaintiff

avers that National City accepted and deposited the supplemental checks in

breach of the "General Release of Any and All Liability" agreement. (Id. at ¶¶

21, 23).

Also on December 1, 2005, American Security issued a "partial" check

made payable to the plaintiff in the amount of $3,173.81.  However, the

plaintiff avers that she is entitled to the balance of the $149,000 insurance

policy on her home at the time of the loss, including the $48,711.26 that

National City received after American Security reinspected the home.  (Id. at ¶

29).

In the period between National City's receipt of supplemental insurance

checks, the plaintiff and National City apparently entered into another formal,

written agreement titled "General Release of Any and All Liability with Single

Exception" on October 17, 2005 under terms similar to the February 2005 agreement. Ostensibly, the single exception in this agreement was that the general release of liability did not apply to the claims asserted in a civil lawsuit filed in United States District Court for the Eastern District of Pennsylvania, which has since been dismissed.[4] (Motion to Dismiss by National City, Ex. B).

The plaintiff filed suit against National City and American Security in this court on January 30, 2006. (Doc. 1). We originally dismissed the case for lack of jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 5). Plaintiff appealed and the Court of Appeals for the Third Circuit, remanded the case to this court (Doc. 12), and plaintiff filed an amended complaint. (Doc. 14). In the amended complaint, the plaintiff brings breach of contract and bad faith claims against American Security. (Am. Complt. at ¶¶ 36-46). A breach of contract claim and a tort claim for intentional interference with contractual relations are brought against National City. (Id. at ¶¶ 47-53). Both defendants subsequently filed motions to dismiss pursuant to Rule 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, bringing the case to its present posture.

---

[4] That case was captioned, Elizabeth Liggon-Redding v. National City Mortgage Co. and American Security Ins. Co., No. 05-03405 (E.D.Pa. 2005). In that case, Judge Legrome Davis granted the defendants' motion to dismiss for improper venue in an order dated January 17, 2006. (Motion to Dismiss by National City, Ex. F).

**JURISDICTION**

The plaintiff is a citizen of Pennsylvania.  (Id. at ¶ 1).  Defendant American Security is a Delaware corporation with business addresses in Miami, Florida and Atlanta, Georgia.  (Id. at ¶ 2).  Defendant National City is an Ohio corporation.  (Id. at ¶ 3).  By combining damage claims against each defendant, the amount in controversy exceeds $75,000.  (Id. at ¶ 4).  As such, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The substantive law of Pennsylvania shall apply to the case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000), citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

**DISCUSSION**

**A. Defendants' Motion to Dismiss for Failure to Join a Party Under Rule 19**

**Standard of review - 12(b)(7)**

Rule 19 of the Federal Rules of Civil Procedure specifies the circumstances when joinder of a party is compulsory.  A defendant may move to dismiss a complaint for plaintiff's failure to join a party in accordance with Rule 19.  FED. R. CIV. P. 12(b)(7).   Courts considering a motion pertaining to Rule 19 follow a multi-step inquiry.  See Gen. Refractories Co. v. First State

Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007); Janney Montgomery Scott, Inc. v.

Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993) (hereinafter "Janney").

The reviewing court must first determine whether the absent party "should be

joined as [a] 'necessary' part[y] under Rule 19(a)." Gen. Refractories Co.,

500 F.3d at 312. Rule 19(a) provides:

> A person who is subject to service of process and whose
> joinder will not deprive the court of subject-matter
> jurisdiction must be joined as a party if: (A) in that
> person's absence, the court cannot accord complete
> relief among existing parties; or (B) that person claims an
> interest relating to the subject of the action and is so
> situated that disposing of the action in the person's
> absence may: (i) as a practical matter impair or impede
> the person's ability to protect the interest; or (ii) leave an
> existing party subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations
> because of the interest.

FED. R. CIV. P. 19(a).

If a "necessary" party should be joined, but "joinder is not feasible

inasmuch as it would defeat diversity of citizenship. . ." courts must next

"determine whether the absent parties are 'indispensable' under Rule 19(b)."

Gen. Refractories Co., 500 F.3d at 312. There are four factors for courts to

consider in determining whether a party is "indispensable":

> (1) the extent to which a judgment rendered in the
> person's absence might prejudice that person or the
> existing parties; (2) the extent to which any prejudice
> could be lessened or avoided by: (A) protective

8

> provisions in the judgment; (B) shaping the relief; or (C)
> other measures;  (3) whether a judgment rendered in the
> person's absence would be adequate; and  (4) whether
> the plaintiff would have an adequate remedy if the action
> were dismissed for nonjoinder.

FED. R. CIV. P. 19(b); General Refractories Co., 500 F.3d at 320-321 (3d Cir. 2007) (analyzing all four factors).

In the Third Circuit, if a non-joined party is determined to be "indispensable," the action cannot go forward.  Gen. Refractories Co., 500 F.3d at 312 (citing Janney, 11 F.3d at 404); Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1053-54 (3d Cir. 1988).

In a motion to dismiss on the pleadings, courts must "accept all factual allegations in the complaints and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiffs."  Lorenz v. CSX Corp., 1 F.3d 1406, 1411 (3d Cir. 1993).  Moreover, the burden is on the party filing the motion to prove that a non-joined party is indispensable to the adjudication of the action.  See F.D.I.C. v. Beall, 677 F. Supp 279, 283 (M.D.Pa. 1987);  Am. Home Mortgage Corp. v. First Am. Title Ins. Co., No. 07-1257, 2007 WL 3349320, at *3 (D.N.J. Nov. 9, 2007);  Fed. Home Loan Mortgage Corp. v. Commonwealth Land Title Ins. Co., No. 92-5255, 1993 WL 95494, at *5 (E.D.Pa. March 31, 1993).

Defendants move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(7), arguing that Tyrone N. Redding, Stewart A. Liggon, and Brandi C. Liggon are "necessary" and "indispensable" parties as the Rules of Civil Procedure define those terms.   According to the Deed, the record owners were "Tyrone N. Redding and Elizabeth H. Liggon, Redding, his wife as trustees for Stewart A. Liggon and Brandi C. Liggon." (See Motion to Dismiss by National City, Ex. A).  Plaintiff Liggon-Redding is the only named plaintiff in this action.  Defendant National City argues that Plaintiff Liggon-Redding wrongly pursues this action in an individual capacity, rather than as trustee.  (Doc. 24 at 9).  Furthermore, Defendants' motions assert that Tyrone N. Redding, as co-owner of the property, is a necessary and indispensable plaintiff.  (Doc. 24 at 9; Doc. 27-2 at 9).  The defendants fear that they will be subject to multiple obligations to these interested parties.  (Id.)

The plaintiff argues that she is the only real party in interest in this action, as evidenced by her being the only named individual on the original mortgage instrument and the residential policy from American Security. (Plantiff's Brief in Opposition to Motion to Dismiss by National City (Doc. 30) at 9) (hereinafter "Pl. Brief in Opp. to National City").  Plaintiff is correct with this argument regarding her status as trustee of the estate for her children.

Because a trustee in an express trust may sue in her own name as a real party in interest without joining the person for whose benefit the action is brought, Stuart A. Liggon and Brandi C. Liggon are not necessary or indispensable parties in this action. See FED. R. CIV. P. 17(a)(1)(E).

The absence of Tyrone N. Redding, a co-owner and trustee of the estate, is of more concern. Although the plaintiff asserts that she has limited power of attorney for matters concerning Tyrone N. Redding, (Pl. Brief in Opp. to National City at 6; See "Ex. B" "Limited Power of Attorney Form") we find that Tyrone N. Redding, Plaintiff Liggon-Redding's husband, is a necessary party pursuant to Rule 19(a)(2)(i) because he has a legitimate interest as co-owner of the property at the center of the dispute, and in his absence, his ability to protect his interest in recovery would be impaired. Even though power of attorney has been granted to one spouse by the other, a presumption exists in Pennsylvania law that "during the term of a marriage, either spouse has the power to act for both without specific authority, so long as the benefits of such action inure to both." J. R. Christ Const. Co. v. Olevsky, 426 Pa. 343, 349 (1967) (citing Kennedy v. Erkman, 389 Pa. 651, 658 (1957)). Having limited power of attorney for a spouse who is the joint owner of real property does not include a power to exclude the spouse from a

11

cause of action related to that property.  Evidence indicates that the plaintiff's husband co-owned the real property in question as a tenant in the entireties. Therefore, he has a considerable interest in the claims against the defendants, as well as in the outcome of this case.

A party must be joined under Rule 19(a)(2)(i) if "some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." Janney, 11 F.3d at 409; see also Sanders v. Sanders, 558 A.2d 556, 560 (Pa. Super. Ct. 1989), allocatur denied, 578 A.2d 930 (Pa. 1990) (explaining when a plea of issue preclusion is valid under Pennsylvania law).   Thus, if the collateral estoppel or res judicata effect of our decision in this case will preclude the plaintiff's husband from seeking recovery in a later suit, he must be joined under Rule 19(a)(2)(i).  "If issue preclusion or collateral estoppel could be invoked against [the absent party] in other litigation, continuation of the federal action could as a practical matter impair or impede [the absent party's] interests and so Rule 19(a)(2)(i) would require its joinder if joinder were feasible." Janney, 11 F.3d at 409 (internal quotation marks omitted).

If we find that Plaintiff Liggon-Redding is not entitled to compensatory damages from her alleged claims and a subsequent court finds her husband to be in privity with her, he will be precluded from protecting his interest in recovering for damages in conjunction with the events alleged.  See Sanders, 558 A.2d at 560 (issue preclusion applies where "the party against whom [it] is asserted was a party or in privity with a party to the prior adjudication"). Significantly, federal courts applying Pennsylvania law have found the spousal relationship sufficient to establish privity for the purposes of claim and issue preclusion.  See Seamon v. Bell Telephone Co. of Pennsylvania, 576 F.Supp. 1458, 1460 (W.D.Pa. 1983) aff'd 740 F.2d 958 (3d Cir. 1984) (finding that res judicata barred the plaintiff from bringing her claims where her husband had previously litigated similar claims because the spousal relationship was sufficient to establish privity).

In Jaillet v. Hill & Hill, the court found that in an action to recover damages to real property, the plaintiff's joint tenants with rights of survivorship were necessary parties under 19(a)(2)(i).  460 F. Supp. 1075, 1078-79 (W.D.Pa. 1978).  There, the plaintiff alleged that the defendants negligently installed a sewer system, thus increasing the sewer assessments on his property.  Id. at 1076.  To the extent that the plaintiff had a claim, her joint

tenants also had a claim.  Id.   The court found that absent joint tenants were necessary because they were in privity and the doctrine of res judicata would preclude them from protecting their interest in their property.  Id.

As such, we find that the plaintiff's husband is a necessary party under Rule 19(a).  He was a co-owner of the property in question, and our decision may, as a practical matter, preclude him from recovering for the alleged damage caused by the breach of contract, bad faith, and intentional interference with contractual relations claims.

Before we determine if the plaintiff's husband is an "indispensable" party in this action under Rule 19(b), we must determine whether it will be feasible to join him.   Neither party has suggested that Tyrone N. Redding is not amenable to service of process, generally unavailable, or that his presence in this litigation would destroy jurisdiction.  Since joinder is feasible, we do not have to determine whether the plaintiff's husband is "indispensable," or if the action can continue.   As such, we will deny defendants' motions to dismiss for failure to join a party.  However, we will order that plaintiff join Tyrone N. Redding be joined as a plaintiff in this lawsuit, considering the effects our decision in this case might have on his potential claims, in addition to the potential for multiple obligations bearing down on the defendants.

**B. Defendant National City's Motion to Dismiss Under Rule 12(b)(6)**

**Standard of review - 12(b)(6)**

When a 12(b)(6) motion is filed, the sufficiency of allegations in the complaint is tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35 (citation omitted).

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at

555 (citation omitted).  This standard does not require "detailed factual allegations." Id. (citation omitted).  However, "the factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  Phillips, 515 F.3d at 232 (citation omitted).  "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.  (citation omitted).

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997).  However, the court is not bound to accept conclusions of law or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse, 132 F.3d at 906).

When considering a motion to dismiss, a court generally should look only to the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997);

<u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

In their motion to dismiss, Defendant National City attacks the plaintiff's complaint on several fronts using many arguments that might be best suited for a summary judgment motion.   We will address them in turn.

First, National City argues that because the parties entered into a settlement agreement in October 2005, titled "General Release of Any and All Liability with Single Exception," the plaintiff is precluded from bringing her claims before this court.  (Motion to Dismiss by National City at 9-10, Ex. B).  To complement that argument, Defendant National City asserts that any previous settlement agreement between the parties prior to this October 2005 agreement is barred by the parol evidence rule. (<u>Id.</u> at 10-12).

The "General Release of Any and All Liability with Single Exception" document is not referenced or attached to the plaintiff's original or amended complaint.[5]  On a motion to dismiss, we refrain from considering the October 2005 document, as it is not "a 'document <u>integral to or explicitly relied upon</u> in the complaint.'" <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1429

---

[5]However, a similar document, entitled "General Release of Any and All Liability," signed by the plaintiff in February 2005, does appear in the plaintiff's original pleading. (Complt., Ex. D).

(quoting <u>Shaw v. Digital Equipment Corp.</u>, 82 F.3d 1194, 1220 (1st Cir. 1996)).  We will also not consider any arguments presented by National City related to this purported second settlement agreement on a motion to dismiss, including whether we should exclude the February 2005 document as parol evidence.

Next, National City argues that the February 2005 document does not satisfy Pennsylvania's Statute of Frauds, which provides that an interest in land be signed by the party so assigning, granting, or surrendering his land.[6] (Motion to Dismiss by National City at 12-13).   National City relies on <u>Eastgate Enterprises, Inc v. Bank & Trust of Old York Road</u>, 345 A.2d 279 (Pa. Super. Ct. 1975) for the proposition that the February 2005 document was never an effective agreement between the plaintiff mortgagee and

---

[6] Pennsylvania's Statute of Frauds states in relevant part that:

> no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law.

33 P.S. §1

defendant mortgagor because the February 2005 agreement, pertaining to an interest in land, was not signed by a representative of National City.

On a motion to dismiss, we find National City's Statute of Frauds arguments unpersuasive, especially since National City at first attempts to argue the validity of the October 2005 document, which is also without signature by a National City representative. As for National City's reliance on Eastgate Enterprises Inc., that case and this case both regard instruments related to a mortgage of real property; however, Eastgate involved an oral agreement between parties not to foreclose. 345 A.2d at 281. The case at bar involves what is purported to be a written document prepared by National City for the agreed satisfaction of the plaintiff's mortgage in exchange for a release of Defendant National City's liability. Here, the plaintiff avers that the February 2005 settlement agreement was drafted solely by National City or National City's counsel, binding them in lieu of a formal signature. The plaintiff also alleges that National City breached this agreement when it accepted supplemental insurance checks from Defendant American Security. At this stage of litigation, we will make no determination as to whether this document was validly prepared by National City or whether it is equitable to

consider this document in light of it being unsigned by a representative for National City.

Finally, National City asserts that the plaintiff has failed to allege all the elements for her breach of contract and intentional interference with contractual relations claims, or, in the alternative, that she cannot prove actual damages, since proof of damages is an element of both averred claims. (Motion to Dismiss by National City at 13-17). Since these arguments are more attuned to a Rule 12(b)(6) motion, we proceed carefully with direction from <u>Twombly</u> and <u>Phillips</u>, *supra*.

To support a claim for breach of contract under Pennsylvania law, "a plaintiff must plead: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." <u>Kane v. State Farm & Cas. Co.</u>, 841 A. 2d 1038, 1042 (Pa. Super. Ct. 2003) (quoting <u>Presbyterian Med. Ctr. v. Budd</u>, 832 A.2d 1066, 1070 (Pa. Super. Ct. 2003).

Here, the plaintiff has pled the existence of the February 2005 agreement, attached with its essential terms: that the plaintiff would release and discharge any legal claims against National City in exchange for National City agreeing to the release and satisfaction of the plaintiff's mortgage after

accepting $39,281.23 in insurance proceeds from Defendant American Security.  (Am. Complt. at ¶ 14).  The plaintiff puts forth that National City breached this purported contract by contacting the plaintiff and informing her that the February 2005 agreement was no longer effective, then subsequently accepting and depositing two supplemental insurance checks after the real property was inspected by an American Security claim adjuster a second time.  (Id. at ¶¶ 20-23).

We find that the plaintiff also plausibly pleads damages.  The plaintiff asserts that, after the alleged breach of the February 2005 agreement, she is entitled to the amount of the supplemental checks totaling $48,711.26.  (Id. at ¶ 34).  We find that the plaintiff has made enough of a showing on her claim for breach of contract to justify moving the case beyond the pleadings.  See Phillips, 515 F.3d 234-35.  Whether there actually was a breach of contract, in light of other circumstances, is a matter for another day.

The second count against National City is intentional interference with contractual relations.  The elements of this cause of action are as follows:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the

21

defendant; and (4) the occasioning of actual legal
damage as the result of the defendant's conduct.

Blackwell v. Eskin, 916 A.2d 1123, 1127-28 (Pa. Super. Ct. 2007); Reading Radio, Inc. v. Fink, 833 A.2d 199, 211 (Pa. Super. Ct. 2003), appeal denied, 577 Pa. 723, 847 A.2d 1287 (2004) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

The plaintiff puts forth that she was named as an additional insured on the insurance policy for her home along with mortgagor National City, which would make her party to a contract with Defendant American Security, a third party. (Am. Complt. at ¶ 8). The plaintiff also alleges that National City misrepresented to American Security "that Plaintiff's home was vacant at the time of the fire, thereby attempting to ensure that Plaintiff would not receive full and proper complement of fire loss benefits." (Id. at ¶ 34). The plaintiff also plainly states in her amended complaint that "Defendant National City Mortgage had no privilege or justification to engage in such conduct in this matter." (Id. at ¶ 54). Moreover, the plaintiff also puts forth that there was a $149,000 policy that covered the home on the property. About $91,000 of that policy was paid out as a result of the loss, leaving approximately $57,000 in remaining insurance proceeds that the plaintiff could not collect because National City allegedly interfered with her rights. (Id. at ¶¶ 8, 25, 55).

While National City argues that the pleadings are conclusory, we have no difficulty concluding that the plaintiff has pled sufficient facts to reasonably

expect that discovery will reveal more evidence necessary for her to prove each element of her intentional interference with contractual relations claim. See Phillips, 515 F.3d at 234.  Moreover, even if we were to find some flaw in the plaintiff's overall case simply from the pleadings, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  For all of the above reasons, we will deny Defendant National City's 12(b)(6) motion.

**B. Defendant American Security's Motion to Dismiss Under Rule 12(b)(6)**

In its motion to dismiss, American Security argues that the plaintiff's cause of action is barred under res judicata doctrine and by the agreed upon statute of limitations in the residential insurance policy.  (Motion to Dismiss by American Security (Doc. 27-2) at 5-8).  We approach each argument separately.

Plaintiff filed a lawsuit against American Security in the Court of Common Pleas for Carbon County, Pennsylvania.[7]   This case was filed while

---

[7] The state court case is captioned E.L. Redding v. National City Mortgage and American Security Ins. Co., No. 07-cv-0052 (Carbon Cty. Ct. of Com. Pleas 2007).

her appeal of our earlier order was pending in the Third Circuit, and it avers a similar claim for a breach of contract against National City and American Security. (Id., Ex. G). The County Court entered summary judgment in favor of Defendant American Security and against the plaintiff. Because summary judgment was entered in its favor and the plaintiff's claim was dismissed with prejudice, American Security argues that the plaintiff is precluded from making that same claim again in federal court. (Id. at 6).

Under federal law of claim preclusion, a claim cannot be raised in a second time in court where: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. Lubrizol Corp. v. Exxon Corp., 929 F. 2d 960, 963 (3d Cir. 1991). Plaintiff concedes in her reply brief that the same parties are involved in this subsequent suit based on the same cause of action; however, she argues that the dismissal of her prior suit in Carbon County was not a final judgment on the merits. (Plaintiff's Brief in Opposition to Motion to Dismiss by American Security (Doc. 35) at 8) (hereinafter "Pl. Brief in Opp. to American Security")

In her brief, plaintiff argues that a final judgment or "adjudication on the merits" has well-settled meaning: "a decision finally resolving that [party's]

claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." (Id.) (quoting Saranchak v. Beard, 583 F. Supp. 2d 847, 861 (M.D.Pa. 2008)).

The Third Circuit Court of Appeals has explained that to determine whether a prior proceeding was a "final judgment" Pennsylvania Courts apply the law of judgments as set forth in the Restatement (Second) of Judgments, which provides four factors to examine.  These four factors are:

> (1) whether the prior decision was 'adequately deliberated and firm' and not 'avowedly tentative';
> (2) whether the parties were fully heard;
> (3) whether the court supported its decision with a reasoned opinion;
> (4) whether the court's prior decision was subject to appeal or was in fact reviewed on appeal.

Greenleaf v. Garlock, Inc., 174 F.3d 352, 358 (3d Cir. 1999) (quoting Restatement (Second) of Judgments § 13 (1982)).

Accordingly, we must review the state court action, which American Security claims has preclusive effect.  As noted above, the plaintiff concedes that the same issues and parties were involved.  In the state court case, however, plaintiff proceeded *pro se*.  American Security filed a counterclaim and new matter in the state court case, and plaintiff filed an answer thereto. (Def. Ex. I, Doc. 26-5).   At the close of discovery, American Security moved for summary judgment.   The basis for the motion was defendant's assertion that plaintiff had admitted the allegations of the counterclaim and new matter

by inadequately answering them.  (<u>Id.</u> at 8 -18).  The court evidently did not issue an opinion but merely issued an order that granted the motion for summary judgment "after considering the Memorandum of Law provided by counsel for American Security Insurance Company and the oral argument of both the Plaintiff and counsel for American Security Insurance Company[.]" (Def. Ex. K, Doc. 26-5, at 2, Order of Carbon County, Pennsylvania Court of Common Pleas).

Based upon these facts and the Restatement factors set forth above, we find that the plaintiff did not receive a final ruling on the merits for her breach of contract claim in her case filed in the Court of Common Pleas. The plaintiff was not in fact fully heard.  Plaintiff, who was at that time proceeding *pro se*, did not respond adequately to the defendant's counterclaim and new matter, thus judgment was granted against her.  This manner of dismissal was more procedural than it was an actual review of the underlying merits of plaintiff's claim.  Moreover, the court did not render a written opinion, but merely issued an order granting the motion for summary judgment. Accordingly, we conclude that the state court case does not have res judicata effect on the instant case as there was no final ruling on the merits.

Defendant American Security's motion to dismiss based upon this argument will be denied.

American Security next argues that the plaintiff is time barred by an agreed upon statute of limitations since the plaintiff did not commence the action prior to the expiration of the one-year period set forth in the residential insurance policy.  (Motion to Dismiss by American Security at 7).  The policy states in paragraph 15 that "[n]o action shall be brought unless there has been compliance with the policy and the action is started within one year after the loss." (Id. Ex. D).  The parties agree that the fire loss in the instant case occurred on July 29, 2004.  Thus, under the terms of the policy  plaintiff had one year to file suit.  Defendant American Security argues that this action was not filed until January 30, 2006 and is thus time barred.

We disagree.  As pointed out by the plaintiff, she originally filed suit in the United States District Court for the Eastern District of Pennsylvania on July 11, 2005, which is within the one-year time limit.  That case, however, was dismissed for improper venue on January 17, 2006 and the case was refiled in this court thirteen (13) days later on January 30, 2006.  As plaintiff filed her original case within the time limit, albeit in the improper venue, and then promptly refiled in the proper venue after it was dismissed in the original

court, we find that she has met the one-year filing limit.  See  Burnett v. N.Y.

Cent. R.R. Co., 380 U.S. 424 (1965) (holding a statute of limitations tolled

when case filed in improper venue).

Indeed, the Third Circuit Court of Appeals has held that:

> a statute of limitations is equitably tolled for a second
> action by the filing of a procedurally defective first
> action if there is: 1) timely notice to the defendant in
> filing the first claim; 2) lack of prejudice to the
> defendant in gathering evidence to defend against the
> second claim; [and] 3) reasonable and good faith
> conduct by the plaintiff in prosecuting the first action
> and diligence in filing the second action.

Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 217 (3d Cir. 2002) (citation
and internal quotation marks omitted).

In the instant case, the defendant has not raised any issue with regard

to timely notice of the first claim or prejudice in gathering evidence to defend

against the second claim.  Additionally, there is no issue raised regarding

whether plaintiff reasonably and in good faith prosecuted the first action.  In

fact, it was merely filed in the Eastern District of Pennsylvania when it should

have been filed in the Middle District of Pennsylvania.  She promptly filed the

second action when the first one was dismissed.  Accordingly, we find no

merit to the defendant's argument regarding the one-year limitation.[8]

---

[8]As we find that plaintiff did file within the one-year time period, we make
no ruling as to whether the one-year limitation actually applies to plaintiff's
case.  That issue is moot.

**CONCLUSION**

For the reasons stated above, the court will deny defendants' motions to dismiss for failure to join a party pursuant to Rule 12(b)(7).   However, we will order plaintiff to join Tyrone N. Redding as a plaintiff in this action within twenty (20) days or the defendants may refile their motion.  We will also deny the defendant' motions to dismiss pursuant to Rule 12(b)(6).    An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ELIZABETH LIGGON-REDDING,** | : | **No. 3:06cv227** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **AMERICAN SECURITY INSURANCE** | : | |
| **COMPANY and NATIONAL CITY** | : | |
| **MORTGAGE COMPANY,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 23rd  day of September 2009:

1) Plaintiff is directed to join Tyrone N. Redding in the above-captioned proceeding with twenty (20) days of the date of this order or the defendants may move for dismissal for failure to join an indispensable party; and

2) The motions to dismiss filed by the defendants (Doc. 24 and Doc. 27) are hereby **DENIED**.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**